UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RALPH CALVERT, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:18-CV-1108-MHH |
| XTRA LEASE, LLC and KRISTIE LAHUE, | } |
| Defendants. | } |

# MEMORANDUM OPINION AND ORDER

## I.  Introduction and Procedural History

On June 15, 2018, plaintiff Ralph Calvert filed this premises liability action against defendants XTRA Lease, LLC and Kristie Lahue in the Circuit Court of Jefferson County, Alabama.  (Doc. 1-1, p. 3).  Mr. Calvert sued Ms. Lahue in her capacity as the branch manager of XTRA's operations in Birmingham.  (Doc. 1-1, p. 4, ¶ 5).  The case concerns an accident that occurred on XTRA's property in May 2017.

Mr. Calvert contends that on May 4, 2017, he visited XTRA's premises on behalf of his employer, Birmingham Mobile Fleet Service, to repair one of XTRA's tractor/trailer units.  (Doc. 1-1, p. 4, ¶ 5).  Mr. Calvert used a rolling staircase to access higher parts of the tractor.  (Doc. 1-1, p. 4, ¶ 5).  In his

complaint, Mr. Calvert alleges that "XTRA provided" the rolling staircase. (Doc. 1-1, p. 4, ¶ 5). According to Mr. Calvert, while he was on the staircase, the staircase's wheels unexpectedly started to roll, and he fell and suffered "significant permanent injuries." (Doc. 1-1, p. 4, ¶¶ 5-6). Mr. Calvert contends that the staircase was unsafe because it "was not equipped with proper safety devices to prevent it from rolling during use," and the "[d]efendants failed to inform" him "that the staircase was not safe for use." (Doc. 1-1, p. 4, ¶ 5).

On July 19, 2018, the defendants removed the case on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). (Doc. 1). On August 17, 2018, Mr. Calvert moved to remand. (Doc. 10). For the reasons explained below, the Court denies Mr. Calvert's motion.

**II. Analysis**

For federal jurisdiction to exist under 28 U.S.C. § 1332(a), there must be complete diversity of citizenship, and the amount in controversy must exceed $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a); *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2012). "[D]iversity jurisdiction is determined at the time of filing the complaint or, if the case has been removed, at the time of removal." *PTA–FLA v. ZTE USA, Inc.*, 844 F.3d 1299, 1306 (11th Cir. 2016). Generally, when jurisdiction is lacking because, for example, a defendant is a citizen of the state in which the plaintiff filed suit,

then a district court must remand the action to state court. "However, if a defendant shows that 'there is no possibility the plaintiff can establish a cause of action against the resident defendant,' then the plaintiff is said to have fraudulently joined the non-diverse defendant. In that situation, the federal court must dismiss the non-diverse defendant and deny any motion to remand the matter back to state court." *Florence v. Crescent Resources, Inc.*, 484 F.3d 1293, 1297 (11th Cir. 2007) (quoting *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006)) (footnote omitted); *Henderson*, 454 F.3d at 1281 ("When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court.").

In his motion to remand, Mr. Calvert argues that the parties are not completely diverse because both he and Ms. Lahue, the individual defendant, are citizens of Alabama. (Doc. 10, p. 1).[1] XRTRA urges the Court to disregard Ms. Lahue's citizenship. XTRA argues that Mr. Calvert joined Ms. Lahue as a defendant for the sole purpose of defeating federal jurisdiction. (Doc. 1, p. 4).

---

[1] Mr. Calvert does not challenge XTRA's contention that more than $75,000 is in controversy in this action. It is facially apparent from Mr. Calvert's complaint that he seeks more than $75,000 in damages. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). Mr. Calvert seeks compensatory damages for lost wages, significant permanent injuries, substantial medical expenses, and extreme pain and suffering. (Doc. 1, ¶ 38; *see also* Doc. 1-1, p. 4, ¶ 6). Mr. Calvert also seeks punitive damages. (Doc. 1, ¶ 39; *see also* Doc. 1-1, p. 5, ¶ 14). These allegations are sufficient to meet § 1332's amount in controversy threshold.

A federal court may disregard the citizenship of a defendant for purposes of diversity jurisdiction when "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (citation omitted). The removing party has the burden of proving fraudulent joinder. 113 F.3d at 1538. "The defendant must make such a showing by clear and convincing evidence." *Henderson*, 454 F.3d at 1281. XTRA has established by clear and convincing evidence that Mr. Calvert pleaded incomplete and misleading facts and that Mr. Calvert cannot establish a cause of action against the resident defendant under Alabama law.

Mr. Calvert asserts three counts in his complaint: negligence, wantonness, and negligent hiring, training, and supervision. (Doc. 1-1, pp. 4-6). "To prevail on his negligence and wantonness claims, [Mr. Calvert] must show, among other things, that [XTRA] owed him a duty. *See Kendrick v. Alabama Power Co.,* 601 So. 2d 912, 914 (Ala. 1992)." *Calloway v. PPG Industries, Inc.*, 155 Fed. Appx. 450, 452 (11th Cir. 2005). The scope of the duty that XTRA owed to Mr. Calvert hinges on the nature of the relationship between Mr. Calvert's employer, BMFS, and XTRA, the owner of the premises where Mr. Calvert was injured.

The Alabama Supreme Court recently reiterated the contours of a premises owner's duty to an employee of an independent contractor under Alabama law, stating:

> A premises owner's legal duty to a party injured by a condition of the premises depends upon the legal status of the injured party. *Galaxy Cable, Inc. v. Davis,* 58 So. 3d 93, 98 (Ala. 2010). In this case, Benito Perez was on SAB's premises to confer a material or commercial benefit to SAB. Accordingly, the relationship between SAB, the premises owner, and Benito Perez, a roofer, is that of invitor/invitee. See *Ex parte Mountain Top Indoor Flea Mkt., Inc.,* 699 So. 2d 158, 161 (Ala. 1997) (" 'In order to be considered an invitee, the plaintiff must have been on the premises for some purpose that materially or commercially benefited the owner or occupier of the premises.' " (quoting *Sisk v. Heil Co.,* 639 So. 2d 1363, 1365 (Ala. 1994))).
>
> Alabama law is well-settled regarding the scope of the duty an invitor owes a business invitee. "The owner of premises owes a duty to business invitees to use reasonable care and diligence to keep the premises in a safe condition, or, if the premises are in a dangerous condition, to give *sufficient warning so that, by the use of ordinary care, the danger can be avoided.*" *Armstrong v. Georgia Marble Co.,* 575 So. 2d 1051, 1053 (Ala. 1991) (emphasis added). We have said that a premises owner's duty to warn extends only to "hidden defects and dangers that are known to [the premises owner], but that are unknown or hidden to the invitee." *Raspilair v. Bruno's Food Stores, Inc.,* 514 So. 2d 1022, 1024 (Ala. 1987). More specifically, we have explained that a plaintiff must establish " '(1) that the defect or danger was "hidden"; (2) that it was "known to the owner"; and (3) that it was "neither known to the contractor, *nor such as he ought to know.*" ' " *Roberts v. NASCO Equip. Co.,* 986 So. 2d 379, 384 (Ala. 2007) (quoting *Ex parte Meadowcraft Indus., Inc.,* 817 So. 2d 702, 706 (Ala. 2001), quoting in turn *Glenn v. United States Steel Corp.,* 423 So. 2d 152, 154 (Ala. 1982)).
>
>> "In discussing a premises owner's liability towards an independent contractor, this Court has recognized that

an ' " 'owner of premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, or *ought to know of*.' " ' "

986 So. 2d at 383 (quoting *Veal v. Phillips,* 285 Ala. 655, 657–58, 235 So. 2d 799, 802 (1970)). See also *Quillen v. Quillen,* 388 So. 2d 985, 989 (Ala. 1980) (to the same effect).

This Court has elaborated on the nature of a premises owner's duty to a business invitee as follows:

> " ' " 'The duty to keep an area safe for invitees is limited to hidden defects which are not known to the invitee and would not be *discovered by him in the exercise of ordinary care.* All ordinary risks present are assumed by the invitee, and the [invitor] is under no duty to alter the premises so as to [alleviate] known and obvious dangers. The [invitor] is not liable to an invitee for an injury resulting from a danger that was obvious or that *should have been observed in the exercise of reasonable care.*' " ' "

*Jones Food Co. v. Shipman,* 981 So. 2d 355, 362 (Ala. 2006) (quoting *Sessions v. Nonnenmann,* 842 So. 2d 649, 651–52 (Ala. 2002), quoting in turn *Breeden v. Hardy Corp.,* 562 So. 2d 159, 160 (1990) (bracketed language in original; some emphasis omitted)). Of particular importance to this case, the Court in *Jones Food* then stated:

> " ' " '*The entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries.* If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be liable.' " ' "

981 So. 2d at 362 (quoting *Sessions v. Nonnenmann,* 842 So. 2d at 651–52, quoting in turn *Breeden v. Hardy Corp.,* 562 So. 2d at 160 (emphasis added)). And as to an independent contractor in particular, we have explained: " ' "*There is no duty to warn*" ... *an independent contractor* "*who has equal or superior knowledge of a potential danger.*" *Roberts,* 986 So. 2d at 383–84 (quoting *Fielder v. USX*

*Corp.,* 726 So. 2d 647, 650 (Ala. 1998), quoting in turn *Alabama Power Co. v. Williams,* 570 So. 2d 589, 592 (Ala. 1990) (emphasis added)).

In *Gray v. Mobile Greyhound Park, Ltd.,* 370 So. 2d 1384 (Ala. 1979) this Court took note of these same fundamental precepts, as set out in *Corpus Juris Secundum,* to explain what the Court referred to as the "no-duty" rule applicable to a premises owner that lacks "superior knowledge" of a danger:

> "Th[e] absence of duty is commonly referred to as the 'no duty' rule and has been thoroughly discussed in 65 C.J.S. *Negligence* § 63(53), at pages 764–68, as follows:
>
> " '. . . .
>
> " '*The basis of the inviter's liability for injuries sustained by the invitee on the premises rests on the owner's superior knowledge of the danger,* and, as a general rule, he is not liable for an injury to an invitee resulting from a danger which was known to the invitee or which was obvious or *should have been observed by the invitee in the exercise of reasonable care,* or from a condition which was as well known or as obvious to the invitee as to the inviter, or from a danger which the invitee should reasonably have appreciated before exposing himself to it, or which the inviter had no reason to believe would not be discovered by the invitee.' "

370 So. 2d at 1388 (emphasis added); accord *General Motors Corp. v. Hill,* 752 So. 2d 1186, 1187 (Ala. 1999) (" '[A]n invitor is not liable for injuries to an invitee resulting from a danger that was known to the invitee or that the invitee should have observed through the exercise of reasonable care.' " (quoting *Ex parte Industrial Distribution Servs. Warehouse, Inc.,* 709 So. 2d 16, 19 (Ala. 1997))).

7

> As indicated by the "ought to know" and "should have known" aspects of the standard quoted above, the duty of a premises owner is measured by an objective standard, not the subjective state of the invitee's knowledge. The question is what was objectively reasonable for the invitor to expect the invitee to know. "As discussed in *Sessions [v. Nonnenmann,* 842 So. 2d 649 (Ala. 2002) ], the question is whether the danger should have been observed, not whether in fact it was consciously appreciated...." *Jones Food,* 981 So. 2d at 362.
> 
> . . .
> 
> The premises owner is not an insurer of his premises and, by the same token, is not an insurer of the acts or omissions of the contractors it brings onto its premises. The existence of a duty on the part of the premises owner to an employee of such a contractor depends, then, on what information the premises owner reasonably could have expected that contractor to have known and acted upon.

*South Alabama Brick Co., Inc. v. Carwie*, 214 So. 3d 1169, 1175-77, 1178

(Ala. 2016). The Alabama Supreme Court stated unequivocally:

> Where a premises owner can reasonably expect that its contractor knows as much or more than the premises owner does regarding a dangerous condition—whether this is so because the danger is open and obvious to anyone, because the owner has told the contractor all it knows, or because of the contractor's expertise and previous experience on the premises—the superiority-of-knowledge test is not met and the premises owner has no further duty to warn the contractor. By extension, in that circumstance, the premises owner has no additional, direct duty to warn the contractor's employees or any subcontractors. To hold otherwise would be to say that a premises owner, despite hiring a contractor whom the owner, for one of the reasons stated above, reasonably expects knows as much o[r] more about the owner's land, building, or fixtures as does the premises owner, must somehow "pull aside" or otherwise communicate directly with each and every employee of the contractor, subcontractor, employee of any subcontractor, etc. Obviously, at the point at which the contractor knows as much or more as does the premises owner regarding the land, building, or fixtures, the

8

> responsibility for sharing that information with its own employees or with subcontractors falls to the contractor.

*Carwie*, 214 So. 3d at 1178-79 (holding as a matter of Alabama law that the premises owner in that case "reasonably could have expected" the contractor to have "at least as much knowledge as did" the owner about the alleged dangerous condition on the premises).

Here, it is undisputed that Mr. Calvert's employer, BMFS, is an independent contractor of XTRA that provides service to XTRA under a maintenance vendor agreement. (Doc. 1-1, p. 4; Doc. 1-2, p. 2, ¶ 3; Doc. 1-4). In his complaint, Mr. Calvert alleges that "XTRA provided [him] with a rolling staircase for him to use to gain access to parts of the tractor/trailer that could not be accessed from ground level." (Doc. 1-1, p. 4, ¶ 5). The Court ordinarily would infer from that allegation that the premises owner owned and controlled the rolling staircase. But what Mr. Calvert failed to mention in his complaint, and what XTRA has proven by clear convincing evidence, is that Mr. Calvert's employer owned the rolling staircase, not XTRA. (Doc. 1-2, p. 3, ¶ 6).

Mr. Calvert does not say otherwise in his motion to remand. Instead, Mr. Calvert argues that because the staircase "remained on the Xtra Lease premises," XTRA and Ms. Lahue breached a duty to him because they "failed to take any reasonable precaution to make sure the equipment could be used safely on

[XTRA's] premises." (Doc. 10, p. 4). Without citing authority from the Alabama Supreme Court or the Alabama Court of Civil Appeals, Mr. Calvert asserts:

> Does a Branch Manager owe a duty to make sure that there are no dangers on the premises? Of course. Does a Branch Manager owe a duty to take reasonable precaution to make sure that any equipment on the premises is in good working order and equipped with proper safeguarding apparatus? Of course. Does a Branch Manager owe a duty to make sure that all workers on the premises, whether employees or independent contractors, are furnished with safe equipment to perform their work. Of course.

(Doc. 10, p. 4).

Mr. Calvert's theory, then, is that in her capacity as branch manager of XTRA's premises, Ms. Lahue had a duty to inspect and repair equipment belonging to Mr. Calvert's employer, BMFS, and to make sure that BMFS provided safe equipment to its employees. Mr. Calvert cannot possibly establish a cause of action against Ms. Lahue under Alabama law for two reasons. First, in the context of a premises owner/independent contractor relationship, a duty, if one exists, runs from the premises owner to an employee of the independent contractor. The Court has found no Alabama authority for the proposition that an employee of a premises owner owes a general duty to an employee of an independent contractor. For such a duty to exist, the owner's employee would have to voluntarily undertake such a duty, and Mr. Calvert does not allege a voluntary undertaking. *See Gibson v. Merrifield*, 964 So. 2d 430 (Ala. Ct. Civ. App. 2007); *Kitchens By nad Through Kitchens*, 604 F. Supp. 531 (M.D. Ala. 1985) (applying

10

Alabama law). Second, as established in the lengthy discussion in *Carwie*, under Alabama law, a premises owner does not owe a duty to the employee of an independent contractor when the premises owner reasonably may expect the contractor to have "at least as much knowledge" of an allegedly dangerous condition as the owner. That objective test certainly is met where the alleged dangerous condition exists in the contractor's equipment.

Because Mr. Calvert cannot possibly establish a cause of action against Ms. Lahue, the Court finds that she is fraudulently joined. The Court will disregard Ms. Lahue's citizenship for the purposes of the jurisdictional analysis in this case. The Court may exercise jurisdiction over this case if Mr. Calvert and XTRA are completely diverse. In its removal petition, XTRA states:

> 2. Plaintiff Ralph Calvert correctly pointed out that Defendant XTRA Lease LLC (hereinafter, "XTRA") is not a citizen of Alabama; more specifically, it is a Delaware limited liability company headquartered in Missouri. *See* Exhibit 1, pg. 2, ¶ 2.

(Doc. 1, ¶ 2). This statement does not establish XTRA's citizenship for diversity purposes.[2] With respect to an unincorporated entity, "diversity jurisdiction in a suit by or against the entity depends on the citizenship of all the members" of the

---

[2] Courts have an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

entity.  *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990); s*ee also Rolling Greens MHP, L.P. v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1021 (11th Cir. 2004).  Therefore, the information in the notice of removal does not allow the Court to confirm that diversity of citizenship exists.

Under 28 U.S.C. § 1653, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."  Consequently, the Court gives XTRA 30 days to amend its citizenship allegations to identify the citizenship of all of the members of the LLC.  XTRA must decompose all of the members of XTRA Lease LLC until only individuals and/or corporations remain, and XTRA must properly allege the citizenship of those individuals and/or corporations.

## III. Conclusion

For the reasons discussed above, the Court finds Mr. Calvert has fraudulently joined Ms. Lahue.  Therefore, the Court dismisses Mr. Calvert's claims against her and denies Mr. Calvert's motion to remand.  If XTRA does not correct its citizenship allegations within 30 days, then the Court will remand this action to state court.

**DONE** and **ORDERED** this 21st day of  December, 2018.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE